# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 9:11-cv-80641-DMM

WINN-DIXIE STORES, INC.; WINN-DIXIE STORES LEASING, LLC; WINN-DIXIE RALEIGH, INC.; WINN-DIXIE RALEIGH LEASING, LLC; WINN-DIXIE MONTGOMERY, LLC; AND WINN-DIXIE MONTGOMERY LEASING, LLC,

    Plaintiffs,

v.

BIG LOTS STORES, INC., an Ohio corp.,

    Defendant/Third-Party Plaintiff,

NORTHEAST PLAZA VENTURE I, LLC; AVON SQUARE, LTD; NOBLE MANAGEMENT COMPANY; NPI, INC.; HUDSON BAY TRADING COMPANY; LAKE WALES ASSOCIATES, LLC; SARRIA HOLDINGS IV, INC.; and IRELAND BILOXI, LTD.,

    Third Party Defendants.

_____/

### STATEMENT OF MATERIAL FACTS IN SUPPORT OF
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Thomas E. Warner
Florida Bar No.: 176725
E-mail: twarner@carltonfields.com
Ryan S. Cobbs
Florida Bar No.: 912611
E-mail: rcobbs@carltonfields.com
**CARLTON FIELDS, P.A.**
CityPlace Tower – Suite 1200
525 Okeechobee Boulevard
West Palm Beach, FL 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368

*Attorneys for Plaintiffs*

# INDEX TO FILINGS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

A. Chart Summary of Lease Information and Violations

B. Declaration of Jeff Gottlieb, Senior Director of Tax Management for Winn-Dixie, with Exhibits (Assignments; Management Agreements)

C. Declaration of Tim McNamara, Vice President of Real Estate for Winn-Dixie, with Winn-Dixie Leases for Stores at Issue

D. Deposition of Kevin Day, Vice President of Real Estate for Big Lots

E. Declaration of Robert Reynolds, Grocery Industry Expert

F. Big Lots' Leases for Stores at Issue

G. Deposition of Mark Jason, Big Lots Store Manager

H. Deposition of Karen Halley, Director of Property Administration for Big Lots

I. **INTENTIONALLY LEFT BLANK** – There is no Exhibit I

J. Affidavit of Richard Harris, Attorney Title Expert

K. Declarations of Investigators and Investigation Reports of Big Lots' Stores at issue

L. Big Lots' Store Maps (floor plan/diagrams)

M. Big Lots 10K Reports

N. Declaration of Dr. Patricia Pacey, Economics Expert, with attached Report

O. Final Judgment - *Winn-Dixie Stores, Inc. v. Noble Management Co. & Dolgencorp, Inc.*, Case No. CI 05-CI-1874 (Fla. 9th Jud. Cir. Aug. 31, 2007), *affirmed*, *Dolgencorp, Inc. v. Winn-Dixie Stores, Inc.*, 988 So. 2d 1287 (Fla. 5th DCA 2008),

P. Case Opinion - *Winn-Dixie Stores, Inc. v 99 Cent Stuff-Trial Plaza, LLC*, 811 So. 2d 719 (Fla. 3d DCA 2002)

Q. Amended Expanded Injunction Order–on remand after *99 Cent Stuff* decision

21878965.1

## STATEMENT OF MATERIAL FACTS

1. Winn-Dixie Stores, Inc. is a Florida Corporation with its principal place of business in Jacksonville, Florida. Declaration of Jeff Gottlieb, Senior Director of Tax Management for Winn-Dixie, Ex. B at ¶ 5. Winn-Dixie operates grocery stores throughout the Southeast, including the states of Florida, Georgia, Alabama, Mississippi and Louisiana. *Id.*; DE 31 at ¶ 3.

2. Winn-Dixie Stores, Inc. is the parent company of the following wholly owned subsidiaries: Winn-Dixie Stores Leasing, LLC (a Fla. LLC); Winn-Dixie Raleigh, Inc. (a Fla. Corp.); Winn-Dixie Raleigh Leasing, LLC (a Fla. LLC); Winn-Dixie Montgomery, LLC (a Fla. LLC); Winn-Dixie Montgomery Leasing, LLC (a Fla. LLC). The principle place of business of all these subsidiaries is Jacksonville, Florida. Ex. B at ¶ 6.

3. On February 21, 2005, Winn-Dixie filed for Chapter 11 bankruptcy. *Id.* at ¶ 7. As a part of the restructuring, the wholly-owned subsidiaries were created for the following purposes:

   a. Winn-Dixie Montgomery Leasing, Winn-Dixie Raleigh Leasing, and Winn-Dixie Stores Leasing were created for the sole purpose of owning the various Winn-Dixie leaseholds. *Id.* They receive no income and they pay no expenses for the various Winn-Dixie stores. *Id.* The leases for the Winn-Dixie locations at issue in this case were assigned or assumed in accordance with the bankruptcy schedule and the master assignments, which are attached to Exhibit B;

   b. Winn-Dixie Raleigh, Inc. and Winn-Dixie Montgomery, LLC are the operating companies for most Winn-Dixie stores in Louisiana, Mississippi, Alabama, and Georgia (and a few in western Florida). *Id.* Winn-Dixie Stores, Inc. is the operating

company for most stores in Florida and a few in Georgia. *Id.* Provisions for the operations of all such Winn-Dixie stores are set forth in "Exclusive Property Management Agreements," which are attached to Exhibit B;

4. For the store locations at issue[1] in this case, Winn-Dixie operates supermarket grocery stores on leased premises in accordance with leases in full force and effect during the relevant time periods. *See* Chart (Ex. A), identifying Winn-Dixie store numbers, corresponding Big Lots store numbers, and summary of lease and store location facts and information; *see also* Leases and related documents attached to Declaration of Tim McNamara, Vice President of Real Estate for Winn-Dixie, Ex. C.

5. 10 of the 16 Winn-Dixie store locations and leases at issue (listed at the end of this paragraph), contain the following grocery exclusive provision:

> Landlord covenants and agrees that Tenant shall have the exclusive right to operate a supermarket in the shopping center and any enlargement thereof. Landlord further covenants and agrees that it will not directly or indirectly lease or rent any property located within the shopping center, or within 1000 feet of any exterior boundary thereof, for occupancy as a supermarket, grocery store, meat, fish or vegetable market, nor will the Landlord permit any tenant or occupant of any such property to sublet in any manner, directly or indirectly, any part thereof to any person, firm or corporation engaged in any such business without written permission of the Tenant; and Landlord further covenants and agrees not to permit or suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock or sell for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant; except the sale of such items in not to exceed the lesser of 500 square feet of sales area of 10% of the square foot area of any storeroom within the shopping center, as an incidental only to the conduct of another business . . . shall not be deemed a violation hereof.

Ex. A (WD Store #s 160, 299, 302, 306, 307, 348, 506, 609, 612, 654); Ex. C (attached leases).

---

[1] Winn-Dixie originally attached a list of 19 store locations which it believed to be at issue (Ex. A to the Amended Complaint, DE 5). Through the discovery process, Winn-Dixie obtained additional information which enabled it to narrow the list of store locations at issue.

6.  The grocery exclusive contained in the lease for Winn-Dixie Store number 236 allows other tenants up to 400 square feet of sales area for groceries. The leases for Winn-Dixie store numbers 254, 698, and 701 contain grocery exclusives that do not allow other tenants to sell any grocery products. Ex. A (WD Store #s 236, 254, 698, and 701); Ex. C (attached leases).

7.  One Winn-Dixie lease (WD Store #2210) contains the standard grocery exclusive language, which has been revised by special edits to limit the restriction to "food" products. Thus the grocery exclusive for 2210 allows sale of "food" by other tenants in up to a maximum of 500 square feet of sales area. Ex. A (WD Store #2210); Ex. C (attached lease).

8.  One Winn-Dixie lease (WD Store #671) contains non-standard grocery exclusive language, which grants Winn-Dixie the exclusive right to operate a grocery store, but allows "variety stores" the right to sell food items, when such sales are "incidental" to the primary operations. Ex. A (WD Store #671); Ex. C (attached lease).

9.  14 of the 16 Winn-Dixie leases at issue in this case contain the following language, without material variation:

> This lease and all of the covenants and provisions thereof shall inure to the benefit of and be binding upon the heirs, legal representatives, successors and assigns of the parties hereto. Each provision hereof shall be deemed both a covenant and a condition and shall run with the land.

Ex. C (attached leases). The remaining two leases do not explicitly provide that its covenants run with the land, though the remaining provisions demonstrate the parties' intent that the covenant run with the land. Ex. C (leases for WD store #s 254, 701).

10. The Winn-Dixie leases for the locations at issue in this case contain legal descriptions of the lease and shopping center premises where each Winn-Dixie store is located. Ex. C (attached leases).

11. Winn-Dixie is an "Anchor Tenant" at the store locations at issue, and provides a benefit to the shopping center owners and other tenants by attracting customers to the shopping center. Deposition of Kevin Day, Vice President of Real Estate, Ex. D at 30/5-32/7; Deposition of Karen Halley, Director of Property Administration, Ex H at 19/1-20/7; Declaration of Robert Reynolds, Grocery Industry Expert, Ex. E at ¶ 10.

12. Grocery Exclusives are customary and standard throughout the grocery store/supermarket industry where grocery stores/supermarkets operate on leased premises in shopping centers, and Big Lots frequently encounters them in its leasing activities, generally, and specifically in regard to Winn-Dixie. Ex. C at ¶ 6; Ex. E at ¶ 5; Ex. D at 18/24-22/14, 29/10-30/8, 43/9-45/16; Ex. H at 9/25-10/11.

13. Big Lots frequently includes commercial exclusives in its leases to protect itself, its business interests and its sales from competition. Big Lots considers such restrictions to be reasonable, and has recorded its leases to protect its interests. Ex. D at 24/19-25/21; Ex. H at 10/19-11/5; Ex. F (Big Lots leases).

14. The common ordinary dictionary meaning of the word "grocery" or "groceries" is as follows:

- "**A store selling foodstuffs and various household supplies**" *American Heritage Dictionary of the American Language– Third Edition*

- "**Articles of food and other goods sold by a grocer**" *Webster's Third New International Dictionary – Unabridged*

- "**Food and other commodities sold by a grocer**" *Random House Unabridged Dictionary – Second Edition*

- Groceries are generally defined as '**articles of food and other goods sold by a grocer**,' and a grocer is defined as '**a dealer in staple food stuffs ... and many household supplies (as soap, matches, paper napkins).**' Webster's Third New International Dictionary 1001(1986), as quoted in *Winn-Dixie Stores, Inc. v 99*

*Cent Stuff-Trial Plaza, LLC*, 811 So. 2d 719 (Fla. 3d DCA 2002) (emphasis added) (attached as Exhibit P).

15. Within the grocery store/supermarket industry, "grocery" or "groceries" means those items listed as Alcoholic Beverages, Grocery-Food, Grocery (Non-Food), and Perishables, as set forth in the annual Consumer Expenditure Study (CES) published annually for over 60 years by "Progressive Grocer."   Ex. E at ¶ 6 and attached copies of CES.

16. In *Winn-Dixie Stores, Inc. v. Noble Management Co. & Dolgencorp, Inc.*, Case No. CI 05-CI-1874 (Fla. 9th Jud. Cir. Aug. 31, 2007), *affirmed*, *Dolgencorp, Inc. v. Winn-Dixie Stores, Inc.*, 988 So. 2d 1287 (Fla. 5th DCA 2008), the trial court interpreted and applied a Winn-Dixie's grocery exclusive **identical** to the grocery exclusive language set forth in paragraph 5, above, and utilized in 10 of the 16 Winn-Dixie leases at issue.  The court, there, found that Winn-Dixie's Grocery Exclusive is clear and unambiguous, and that the term "groceries" as used in Winn-Dixie's Grocery Exclusive includes food and non-food items as set forth in the Consumer Expenditure Survey (the actual name is Consumer Expenditure "Study," as shown by the attachment to the Final Judgment).  A copy of the Final Judgment is attached as Exhibit O.  Moreover, on remand after the *99 Cent Stuff* appellate decision, the trial court issued an Amended Expanded Injunction Order, wherein the court looked to the CES to define the scope of the term grocery.  A copy of the Order is attached as Exhibit Q.

17. The phrase "sales area" as utilized in Winn-Dixie leases means the footprint of the display shelves and a proportionate share of the corresponding aisle space. Ex. E at ¶ 9. The phrase "sales area" means all the space in a Big Lots Store, less the stock or storage room and office space, as used within Big Lots' own "store maps" (floor plans or store diagrams).  Big Lots' employees recognize that customer aisle space is included within "sales area", and that

sales area means all of the area in the store except store rooms and office space. *Id*; Deposition of Mark Jason, Big Lots Store Manger, Ex. G at 23/2-23/18; Ex. D at 32/8-32/24.

18. Short forms of Winn-Dixie's leases, memorandums of lease incorporating the Winn-Dixie leases, or declarations, all of which either contain the Grocery Exclusive language or refer to the lease which includes the Grocery Exclusive language, are recorded in the public records of the jurisdiction where the Winn-Dixie stores are located. Ex. C and attached Winn-Dixie leases; Ex. A; Affidavit of Richard Harris, Attorney Title Expert, with attached report, Ex. J.

19. Defendant currently operates or did operate Big Lots Stores at the Winn-Dixie shopping center locations and within the time frames at issue. Ex. F (BL leases); Declarations of Investigators and Investigation Reports of Big Lots' Stores at issue, Composite Ex. K.

20. Winn-Dixie's leases were executed prior to the Big Lots leases for all the stores at issue. Ex. A; *Compare* Ex. C (attached leases for WD Stores) *with* Ex. F (BL leases).

21. Defendant had constructive notice of Winn-Dixie's grocery exclusive at each of the locations at issue. Ex. J.

22**.** Big Lots is an experienced, sophisticated commercial tenant with over 1,400 lease locations for Big Lots stores in 48 states. Big Lots frequently encounters and knows that grocery store and supermarket chains have grocery exclusives in their shopping center leases, and Defendant frequently includes "exclusives" in its own leases to protect itself from other competition. Ex. D at 15/12-22/14, 24/19-25/21, 29/10-30/8, 34/25-35/3, 43/9-45/16; Ex. H at 10/19-11/13, 20/8-20/18.

23. Defendant had implied actual notice of Winn-Dixie's grocery exclusives at the locations at issue. *Supra* at ¶¶ 11-13, 22.

24. Defendant had actual knowledge of Winn-Dixie's grocery exclusive with regard to at least seven of the 16 store locations at issue, as the language of Winn-Dixie's grocery exclusive is included in five of Defendant's own leases, and a reference to Winn-Dixie as a restriction is included an additional two leases. These certain locations are noted on the Chart at Exhibit A; *see also* Ex. C (attached leases for WD Stores); Ex. F (BL leases); Ex. D at 43/9-45/15.

25. Winn-Dixie has not waived its grocery exclusive at any of the locations at issue and there are no documents evidencing any implied or affirmative representation by Winn-Dixie that it would not enforce its grocery exclusive against Defendant. Ex. C at ¶ 7; *see also* Ex. D at 35/20-36/6 (Deposition of Kevin Day, V.P. of Real Estate for Big Lots, stating that he does not know of any Winn-Dixie actions or documents indicating that Winn-Dixie had waived or modified its grocery exclusive in regard to any Big Lots store, and he does not know of any actions by Winn-Dixie indicating that it would not enforce its grocery exclusive); Ex. H at 23/3-23/18.

26. In accordance with the investigation reports, Defendant has violated and continues to violate Winn-Dixie's grocery exclusive at the store locations at issue, by utilizing "sales area" to display and sell grocery products in excess of what is allowed by the applicable Winn-Dixie grocery exclusive. Ex. A; Composite Ex. K.

27. "Store Maps" (store floor plan diagrams produced by Defendant) for most of the Big Lots stores at issue reflect the shelf and aisle space (sales area) devoted to the products displayed in the stores at issue. These floor plans, and the sales area devoted to the designated products, remain essentially the same at each store, unless the store is expanded, re-located, or remodeled, and a new or revised floor plan is prepared. Deposition of Mark Jason, Big Lots

Store Manager, Ex. G at 13/8-22/18. These floor plans indicate that the sales area devoted to grocery products is far in excess of that allowed by Winn-Dixie's Grocery Exclusive at each Big Lots store at issue. Ex. A; Big Lots' Store Maps (floor plan/diagrams), Ex. L.

28. Defendant's sale of grocery products is a major part of its business plan, and not merely "incidental" to its business. *See* Composite Ex. K (Investigation Reports); Ex. L (Big Lots Store Maps); Big Lots 10K Reports, Ex. M; Ex. E at ¶ 10; s*ee also* Ex. A.

29. Of the 16 Big Lots stores at issue, Defendant continues to operate 15 of those stores in violation of Winn-Dixie's Grocery Exclusives, resulting in an average of 7.7% loss of sales at the affected Winn-Dixie stores. Composite Ex. K (Investigation Reports); Declaration of Dr. Patricia Pacey, Economics Expert, with attached Report, Ex. N at ¶ 6. Only one of the Big Lots stores at issue is now closed (WD store #701/BL store #1605). Ex. A.

**Dated: January 17, 2012**

               Respectfully submitted,

               **CARLTON FIELDS, P.A.**
               CityPlace Tower – Suite 1200
               525 Okeechobee Boulevard
               West Palm Beach, FL 33401
               Telephone: (561) 659-7070
               Facsimile: (561) 659-7368

             By: /s/ Thomas E. Warner
               Thomas E. Warner
               Florida Bar No.: 176725
               E-mail: twarner@carltonfields.com
               Ryan S. Cobbs
               Florida Bar No.:  912611
               E-mail: rcobbs@carltonfields.com

               *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2012, I electronically filed the foregoing document with the Clerk of the Court using the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

| | |
|---|---|
| Michael V. Elsberry<br>michael.elsberry@lowndes-law.com<br>W. Drew Sorrell<br>drew.sorrell@lowndes-law.com<br>Rebecca E. Rhoden<br>rebecca.rhoden@lowndes-law.com<br>**LOWNDES DROSDICK DOSTER**<br>**KANTOR & REED, P.A.**<br>450 South Orange Avenue, Suite 800<br>Orlando FL 32802-2809<br>Telephone:  (407) 843-4600<br>Facsimile:  (407) 843-4444<br>*Attorneys for Defendant, Big Lots Stores, Inc.* | William N. Withrow, Jr.<br>william.withrow@troutmansanders.com<br>Brian P. Watt<br>brian.watt@troutmansanders.com<br>Shakara Barnes<br>shakara.barnes@troutmansanders.com<br>**TROUTMAN SANDERS, LLP**<br>600 Peachtree Street, N.E., Suite 5200<br>Atlanta GA 30308<br>Telephone:  (404) 885-3000<br>Facsimile:  (404) 885-3900<br>*Attorneys for Defendant, Big Lots Stores, Inc.* |
| Alan Michael Burger<br>aburger@mcdonaldhopkins.com<br>**MCDONALD HOPKINS LLC**<br>505 South Flagler Drive<br>Suite 300<br>West Palm Beach FL 33401<br>Telephone:  (561) 472-2121<br>Facsimile:  (561) 472-2122<br>*Attorney for Sarria Holdings IV, Inc.* | Sergiu Gherman<br>sgherman@ghermanlaw.com<br>**GHERMAN LEGAL PLLC**<br>The Ingraham Building<br>25 S.E. 2nd Avenue<br>Suite 808<br>Miami FL 33131-1603<br>Telephone:  (305) 459-1551<br>Facsimile: (305) 459-1551<br><br>-and-<br><br>J. Kemp Brinson (Pro Hac Vice app submitted)<br>kbrinson@ccmattorneys.com<br>CLARK, CAMPBELL & LANCASTER, P.A.<br>500 South Florida Avenue<br>Suite 800<br>Lakeland, FL 33801<br>Telephone:  (863) 647-5337<br>Facsimile:  (863) 647-5012 |

| | *Attorneys for Avon Square, Ltd.* |
|---|---|
| Gary S. Phillips | Cristopher S. Rapp |
| gphillips@phillipslawyers.com | csrapp@jones-foster.com |
| Laura J. Varela | Robert W. Wilkins |
| lvarela@phillipslawyers.com | rwilkins@jones-foster.com |
| **PHILLIPS, CANTOR & BERLOWITZ, P.A.** | **JONES FOSTER JOHNSTON & STUBBS** |
| 4000 Hollywood Boulevard | 505 South Flagler Drive |
| Suite 500-North | Suite 1100 |
| Hollywood FL 33021 | West Palm Beach FL 33401 |
| Telephone: (954) 966-1820 | Telephone: (561) 659-3000 |
| Facsimile: (954) 414-9309 | Facsimile: (561) 650-0412 |
| *Attorney for Hudson Bay Trading Co.* | *Attorney for NPI, Inc. and Noble Mgmt. Co.* |
| | |
| Marc A. Silverman | Michelle G. Gilbert |
| msilverman@fwblaw.net | michelle@gilbertgrouplaw.com |
| David W. Black | **GILBERT GARCIA GROUP, P.A.** |
| dblack@fwblaw.net | 2005 Pan Am Circle |
| **FRANK, WEINBERG, BLACK, P.L.** | Suite 110 |
| 7805 S.W. 6th Court | Tampa, FL 33607 |
| Plantation FL 33324 | Telephone: (813) 443-5087 |
| Telephone: (954) 474-8000 | Facsimile: (813) 443-5089 |
| Facsimile: (954) 474-9850 | *Attorney for Lake Wales Associates, LLC* |
| *Attorney for Ireland Biloxi, Ltd.* | |

Richard Dunn
rdunn@cozen.com
Jermaine A. Lee
jalee@cozen.com
**COZEN O'CONNOR**
200 South Biscayne Boulevard
Suite 4410
Miami, FL 33131-2303
Telephone: (305) 704-5940
Facsimile: (305) 704-5955
*Attorneys for Northeast Plaza Venture I, LLC*


By: /s/ Thomas E. Warner
    Thomas E. Warner
    Florida Bar No.: 176725
    E-mail: twarner@carltonfields.com
    Ryan S. Cobbs
    Florida Bar No.: 912611
    E-mail: rcobbs@carltonfields.com