UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:11-CV-80641-DMM

WINN-DIXIE STORES, INC.; WINN-DIXIE
STORES LEASING, LLC; WINN-DIXIE
RALEIGH, INC.; WINN-DIXIE RALEIGH
LEASING, LLC; WINN-DIXIE
MONTGOMERY, LLC; and WINN-DIXIE
MONTGOMERY LEASING, LLC,

    Plaintiffs,

vs.

BIG LOTS STORES, INC., an Ohio
corporation,

    Defendant and Third-Party Plaintiff,

vs.

NORTHEAST PLAZA VENTURE I, LLC, *et al*,
    Third-Party Defendants.

---

**DEFENDANT AND THIRD-PARTY PLAINTIFF
BIG LOTS STORES, INC'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 7.5, Defendant and Third-Party Plaintiff Big Lots Stores, Inc. (hereinafter "Big Lots") hereby moves for final summary judgment on both counts of the Amended Complaint in favor of Big Lots and against Plaintiffs Winn-Dixie Stores, Inc., Winn-Dixie Stores Leasing, LLC, Winn-Dixie Raleigh, Inc., Winn-Dixie Raleigh Leasing, LLC, Winn-Dixie Montgomery, LLC, and Winn-Dixie Montgomery Leasing, LLC (collectively, "Plaintiffs" or "Winn-Dixie").

1

## INTRODUCTION

In this action, Plaintiffs purport to seek damages and injunctive relief from Big Lots alleging that it has "violated" 19 separate lease provisions referred to as "grocery exclusives" -- restrictive covenants that Plaintiffs have negotiated with their landlords and allegedly incorporated into some of their leases. ECF No. 5. The 19 separate breaches of Plaintiffs' "grocery exclusives" are alleged to have occurred in shopping centers located in Florida, Georgia, and Mississippi over an unspecified period of time. *Id.*

In "Exhibit A" to their Amended Complaint, Plaintiffs identify 19 locations in which Plaintiffs and Big Lots allegedly operate stores in the same shopping center. ECF. No. 5-1. According to Plaintiffs, the Big Lots and Winn-Dixie stores in these 19 locations are "co-located." Plaintiffs contend that in each of these shopping centers, Plaintiffs possess the exclusive right to sell certain grocery items, and that Big Lots has violated its "typical grocery exclusive" by "selling grocery items in excess of what is permitted." ECF No. 14 at 7. In the Amended Complaint, Plaintiffs allege:

> . . . Winn-Dixie's leases typically include a "Grocery Exclusive" provision, which grants Winn-Dixie the exclusive right to operate a supermarket, grocery store, meat, fish or vegetable market in the shopping center for the duration of its lease, and, that no other property located within the shopping center shall be used for or occupied by any business dealing in or selling for off premises consumption any staple or fancy groceries, meat, fish, vegetables, fruits, bakery goods, dairy products or frozen foods, without written permission of Winn-Dixie.

ECF No. 5, ¶ 19. According to the Amended Complaint, the "typical" grocery exclusive prohibits any co-located businesses from selling <u>any</u> staple or fancy groceries and various foodstuffs without Plaintiffs' written permission. *Id.* The "typical" grocery exclusives described in Plaintiffs' Amended Complaint apparently vary from blanket exclusions to permissive provisions that "allow other business tenants to sell grocery items up to a certain maximum

2

square footage of sales area." *Id.*, ¶ 20. Yet, Plaintiffs do not differentiate between an alleged violation of the "typical" grocery exclusive, which imposes a categorical prohibition against selling certain types of groceries, and a violation of some other variation of the grocery exclusive that contains an exception allowing the sale of certain grocery items up to a certain square footage. The Amended Complaint seeks damages for Big Lots' alleged breaches of the so-called grocery exclusives in Count I and alternatively seeks to enjoin Big Lots from future breaches of the grocery exclusives in Count II. *See id.*

Big Lots' Motion for Summary Judgment should be granted for the following reasons:

1. Winn-Dixie's "grocery exclusives" are not enforceable against Big Lots as real property covenants running with the land.

2. Winn-Dixie's claims fail against Big Lots store numbers 501, 505, 1397, 1507, 1605, 1711, and 1873, which are not subject to, and therefore cannot be in violation of, any so-called Winn-Dixie "grocery exclusive."

3. Big Lots is entitled to judgment as a matter of law on the issue of damages by virtue of the bankruptcy reorganization in 2006 of Winn-Dixie Stores, Inc. and certain affiliates.

4. Big lots is entitled to judgment as a matter of law on Plaintiffs' punitive damages claim

## ARGUMENT AND CITATION TO AUTHORITY

### I. LEGAL STANDARD FOR ENTRY OF SUMMARY JUDGMENT

The grounds upon which the Court may enter summary judgment are set forth in Rule 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). The entry of summary judgment is properly regarded "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Quantum Comm. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1257 (S.D. Fla. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1)). Once Big Lots has met its initial burden of identifying sufficient evidence to demonstrate the absence of a genuine issue of material fact, the burden shifts to Plaintiffs to supply the Court with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *Annunziata v. School Bd. of Miami-Dade County*, No. 04-12560, 2005 WL 591205, at *4 (11th Cir. Mar. 4, 2005); *Ashmore v. Fed. Aviation Admin.*, No. 11-60272-CIV, 2011 WL 5433924, at *5 (S.D. Fla. Nov. 8, 2011). To meet their burden, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). No genuine issues of material fact exist regarding the matters brought forth in this motion, so the Court should enter summary judgment in favor of Big Lots and against Winn-Dixie for the reasons contained herein.

II. **SUMMARY JUDGMENT IS PROPER BECAUSE WINN-DIXIE'S "GROCERY EXCLUSIVES" ARE NOT ENFORCEABLE AGAINST BIG LOTS AS REAL PROPERTY COVENANTS RUNNING WITH THE LAND.**

Contrary to the fundamental premise of Plaintiffs' case, Plaintiffs' "grocery exclusives" do not meet the criteria for "real property covenants running with the land." Rather, the covenants negotiated between Plaintiffs and their respective landlords are personal to the contracting parties and unenforceable in a direct action against a non-signatory co-tenant like Big

4

Lots. Aside from the anomalous Florida appellate court opinion on which Plaintiffs so heavily rely,[1] [*See* ECF No. 14 at 2-5, 11] there is no basis for finding that the so-called "grocery exclusives" constitute "real property covenants running with the land" under Georgia or Mississippi law, nor is there any support for Plaintiffs' extraordinary attempt to take direct action against a co-tenant. In short, Big Lots is entitled to summary judgment on Plaintiffs' claims against it because the covenants cannot be enforced directly against Big Lots.

### a. Plaintiffs Lack Privity With Big Lots, Rendering Their Covenants Unenforceable Against Big Lots As A Matter Of Law.

"A tenant who has the benefit of a noncompetition clause can sue the landlord for breach if the landlord permits another tenant to compete in violation of the clause; he cannot, however, sue the competing tenant itself because there is no privity of contract between them." 2-17A POWELL ON REAL PROPERTY § 17A.02(5)(a). Each of the relevant jurisdictions follows this basic precept by requiring privity of contract between the party claiming the benefit of a noncompetition clause and the party against whom the clause is sought to be enforced.[2] *See* Fla. Stat. § 542.335(1)(a) ("[a] court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought."); *Tusa v. Roffe*, 791 So. 2d 512, 514 (Fla. 4th DCA 2001); *Vulcan Materials Co. v. Miller*, 691 So. 2d 908, 914 (Miss. 1997) ("For a covenant to be real rather than personal, it must be shown that…privity of estate exists between the person claiming the right to enforce the covenant and the person upon whom the burden is to be imposed[.]"); *Ricketson v. Bankers First Sav. Bank*, 233 Ga. App. 11, 13 (1998) ("In order that [a covenant] may run with the land, its performance or nonperformance must

---

[1] *Winn-Dixie Stores, Inc. v. Dolgencorp, Inc.*, 964 So. 2d 261 (Fla. 4th DCA 2007).
[2] Big Lots asserted in its Seventh Affirmative Defense in its Answer [ECF No. 31] that Plaintiffs' contract-based claims were unenforceable against Big Lots and fail as a matter of law because Big Lots was not a party to any Winn-Dixie lease containing a "grocery exclusive." Big Lots incorporates the argument herein as support for its Motion for Summary Judgment.

affect the nature, quality, or value of the property demised, independent of collateral circumstances, or it must affect the mode of enjoyment, ***and there must be a privity between the contracting parties.***") (emphasis added) (quoting *Atlanta Consolidated St. R. Co. v. Jackson*, 108 Ga. 634, 638-9 (1899)). Here, Winn-Dixie improperly seeks to enforce the various noncompetition clauses that it obtained from its landlords directly against a non-signatory co-tenant,[3] Big Lots. *Cf. Contemporary Interiors, Inc. v. Four Marks, Inc., et al.*, 384 So. 2d 734, 736 (Fla. 4th DCA 1980) (rejecting plaintiff-tenant's theory that it could enforce exclusive use provision in its lease directly against co-tenant, stating, "while plaintiff may have a valid cause of action against [the landlord] for breach of contract, nothing in the record supports a clear legal right against plaintiff's co-tenant"). It is undisputed that no privity exists between Plaintiffs and Big Lots, and there are no allegations that Big Lots ever assumed any obligation to Plaintiffs. *See* Statement of Facts ("SOF"), ¶ 15. On its face, Plaintiffs' so-called "grocery exclusive" obligates only the landlord who agreed to the provision. Because Big Lots is <u>not</u> a signatory to any of Winn-Dixie's agreements with their landlords, and because Plaintiffs' restrictive covenants are <u>not</u> even mentioned in the majority of the lease agreements to which Big Lots is a signatory,[4] Plaintiffs' attempt to assert claims directly against Big Lots fails as a matter of law under each state's law applicable to this action.

  b. **A Non-Competition Clause Like Plaintiffs' "Grocery Exclusive" Does Not "Touch And Concern" The Land.**

Courts in each of the relevant jurisdictions distinguish between mere personal covenants, which bind only the contracting parties, and real property covenants running with the land, which

---

[3] As discussed in greater detail in Section III, *supra*, in multiple instances, no Big Lots store is co-located as alleged with Winn-Dixie.

[4] In the rare instance that a Big Lots lease does contain a reference to a Winn-Dixie restrictive covenant, that contract provision is a term in the lease agreement between Big Lots and its landlord to be enforced, if at all, by Big Lots' landlord -- not Winn-Dixie.

attach to the property and bind successors and assigns, on the basis of whether the covenant "touches and concerns" the land. Florida's appellate courts have described the "touch and concern" test as satisfied "when either the liability to perform it or the right to take advantage of it passes to the vendee or other assignee of the land." *Hagan v. Sabal Palms, Inc.*, 186 So. 2d 302, 311 (Fla. 2d DCA 1966). Where a covenant "relates directly to the land conveyed, sticks to it, and follows it into the hands" of subsequent purchasers or tenants, then the covenant is considered to "run with the land" under Georgia law. *Howard Mfg. Co. v. Water Lot Co.*, 53 Ga. 689, 693 (1875). But, where the covenant merely restricts the conduct to take place on demised property or is limited in its application to the specific contracting party who receives the benefit, then the covenant is merely personal and enforceable only against the party making the agreement. *See Goldberg v. Varner*, 72 Ga. App. 673, 676 (1945).

In this case, the plain language of the contracts unambiguously demonstrates the personal nature of the covenants in Plaintiffs' lease agreements. *See* ECF No. 5 at ¶ 19. By its own terms, the "grocery exclusive" obligates and burdens, not the land, but the landlord. *See id.* The landlord covenants to Winn-Dixie that the landlord will not "suffer any property located within the shopping center to be used for or occupied by any business dealing in or which shall keep in stock for off-premises consumption any staple or fancy groceries, meats, fish, vegetables, fruits, bakery goods, dairy products or frozen foods without written permission of the Tenant." *Id.* This sort of noncompetition clause, restricting only the conduct that may take place on the property for the benefit of a specific tenant, does not "touch and concern" the land, because it is specific to Winn-Dixie. *See Caulk v. Orange County*, 661 So. 2d 932, 934 (Fla. 5th DCA 1995); *U-Serve Petroleum*, 486 So. 2d at 824 ("Although the contract in question stated that it was to

"run with the land," it was in fact a personal contract between Cambre and U-Serve *because it favored the person of U-Serve and not a dominant estate*.") (emphasis added).

Thus, a crucial element in the analysis of whether a covenant "runs with the land" is lacking here. *See James Talcott, Inc. v. Roy D. Warren Commercial, Inc.*, 120 Ga. App. 544, 545-546 (1969); *Caulk* 661 So. 2d at 934. Because Plaintiffs' "grocery exclusives" impose benefits and burdens specific to the original contracting parties, these restrictive covenants cannot satisfy the "touch and concern" element and, therefore, cannot be enforced against Big Lots.

### c. Florida's Appellate Authority Is In Conflict, And This Court Should Apply Florida Law As The Florida Supreme Court Would.

As a federal court sitting in diversity, this Court is bound to apply Florida law as would the Florida Supreme Court. *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 838 F. Supp. 572, 575 (M.D. Fla. 1993). Where the State's intermediate appellate courts are divided on an issue, this Court should make an "educated guess" as to how the Florida Supreme Court would rule. *Small Bus. Admis. v. Echevarria*, 864 F. Supp. 1254, 1262 (S.D. Fla. 1994). Such a divide exists on the issue of whether Winn-Dixie's restrictive covenant can be enforced against a non-signatory such as Big Lots.

Section 542.335 of the Florida Code, which governs the enforcement of restrictive covenants, explicitly provides that "[a] court shall not enforce a restrictive covenant unless it is set forth in writing *signed by the person against whom enforcement is sought*." Fla. Stat. §542.335(1)(a) (emphasis added). In *Tusa v. Roffe*, 791 So.2d 512 (Fla. 4th DCA 2001), the plaintiff (Tusa) attempted to enforce a restrictive covenant much like Winn-Dixie's "grocery exclusive" directly against a co-tenant (KKA) that began operating a business in the same shopping center in violation of the restriction. *Id.* at 514. The Florida appellate court affirmed

the trial court's dismissal of the plaintiff's claims. "In this case there is no contractual privity between KKA and Tusa. ... Accordingly, we hold that, under section 542.335(f)(1), Tusa has no viable claim against KKA." *Id.* Under *Tusa* and Section 542.335 of the Florida Code, Winn-Dixie is precluded from asserting its claims against Big Lots because Winn-Dixie has no contractual privity with Big Lots, and Winn-Dixie was not identified as a third-party or intended beneficiary in Big Lots' leases. Moreover, even if Winn-Dixie were a third party beneficiary of a Big Lots lease, which it is not, there is no restriction on the sale of products in Big Lots' lease to be enforced.

Plaintiffs rely almost exclusively on *Winn-Dixie Stores, Inc. v. Dolgencorp, Inc.*, 964 So. 2d 261 (Fla. 4th DCA 2007), for the notion that the "grocery exclusive" in their leases with their landlords can be enforced directly against Big Lots. *See* ECF No. 14 at 2-5, 11. Big Lots respectfully submits that the holding in *Winn-Dixie* is in error and contrary to the clear mandate of Florida Code Section 542.335. On the other hand, *Tusa* and earlier cases like *Contemporary Interiors, Inc. v. Four Marks, Inc., et al.*, 384 So. 2d 734 (Fla. 4th DCA 1980) explicitly hold that the rights and obligations arising out of restrictive covenants, like all basic contract rights, are to be enforced by and against the parties to the agreement. *See Tusa*, 791 So. 2d at 514; *see also Kilgore v. Killearn Homes Ass'n, Inc.*, 676 So. 2d 4, 7 (Fla. 1st DCA 1996) ("Restrictive covenants 'are private promises or agreements creating negative easements or equitable servitudes which are enforceable as rights arising out of contract.'"); *AT&T Wireless Svcs. of Florida, Inc. v. WCI Communities, Inc.*, 932 So.2d 251, 254 (Fla. 4th DCA 2005) ("Deed restrictions on lands are deemed contractual in nature and subject to the same rules of interpretation as are contracts.").

The Florida Supreme Court has repeatedly emphasized that covenants like Plaintiffs' "grocery exclusive" are to be "strictly construed in favor of the free and unrestricted use of real property." *Moore v. Stevens*, 90 Fla. 879, 885 (Fla. 1925); *see also Palm Point Property Owners' Ass'n v. Pisarski*, 626 So. 2d 195, 197 (Fla. 1993) ("the long-standing rule that covenants that run with the land must be strictly construed in favor of the free and unrestricted use of real property calls for a more restrictive application of the rules of standing in this area."). Coupled with the plain language of Florida Code Section 542.335, Big Lots contends that the Florida Supreme Court, if confronted with this issue today, would adopt the *Tusa* court's reasoning and hold that Plaintiffs' claims against Big Lots fail for lack of privity. *See Tusa*, 791 So. 2d at 514; Fla. Stat. §542.335(1)(a).

### III. BIG LOTS IS ENTITLED TO SUMMARY JUDGMENT REGARDING THE BIG LOTS STORES THAT ARE NOT SUBJECT TO, AND THEREFORE CANNOT BE IN VIOLATION OF, ANY SO-CALLED WINN-DIXIE "GROCERY EXCLUSIVE."

Assuming for the sake of this Motion that Plaintiffs' "grocery exclusive" could be enforced against a non-signatory co-tenant, the plain language of the covenant itself—as provided in the Amended Complaint—limits its own reach to the shopping center in which Winn-Dixie is located, or any property owned by Winn-Dixie's landlord that is within 1,000 feet of the shopping center. *See* ECF No. 5, ¶ 19. As such, Big Lots cannot be said to be in violation of the so-called restriction if it is neither co-located with a Winn-Dixie nor located within 1,000 feet of a Winn-Dixie store that is located on property owned by Winn Dixie's landlord. Winn-Dixie similarly cannot succeed on its claim that Big Lots "violated" Winn-Dixie's restrictive covenant for a Big Lots store that opened before Winn-Dixie recorded its short form lease. Additionally, in some instances, Winn-Dixie either did not record a short form lease, or the

10

recorded short form lease does not reference or include any "grocery exclusive." Big Lots is entitled to summary judgment in each such instance.

The "evidence" Plaintiffs rely upon to support their assertion that the allegedly "at issue" Big Lots stores are actually violating a restrictive covenant is a chart attached to Plaintiffs' Amended Complaint, which lists the Winn-Dixie store number and address, followed by the address for the allegedly violating Big Lots store. ECF No. 5-1. Plaintiffs do not provide the Court with any straightforward evidence that the stores they contend are violating the "grocery exclusives" are actually located in the same shopping center as the alleged corresponding Winn-Dixie store or on property that is owned by Winn-Dixie's landlord within 1,000 feet of such shopping center. Similarly, Plaintiffs fail to show that they recorded a short form lease for each Winn-Dixie store, or that each recorded short form lease contains a "grocery exclusive."

Not all of the Big Lots stores listed in Exhibit "A" to the Amended Complaint [ECF No. 5-1] are co-located with Winn-Dixie stores as alleged by Plaintiffs. In fact, the following stores either have <u>never</u> been located in the same shopping centers or do not have common landlords: Big Lots 1605/Winn-Dixie 701; Big Lots 1397/Winn-Dixie 299; Big Lots 1873/Winn-Dixie 1513. *See* ECF No. 80 at 2; ECF No. 77-1 at 6, 39; ECF No. 94-1 at 1-3; SOF, ¶ 11; Halley Aff. ¶ 5. Additionally, Big Lots store 1711 is not subject to a Winn-Dixie exclusive because it is located at a distance of more than 1,000 square feet from Winn-Dixie store 302. *See* SOF, ¶ 12; Halley Aff. ¶ 6. Big Lots cannot be "violating" any of Winn-Dixie's alleged "grocery exclusives" where it is not co-located with a Winn Dixie or leasing property from Winn-Dixie's landlord within 1,000 feet of a Winn-Dixie, and Plaintiffs are not entitled to either damages or injunctive relief relating to these stores. The Court should enter summary judgment in favor of

11

Big Lots for Winn-Dixie's claims as they relate to Big Lots store numbers 1397, 1605, 1873 and 1711.

In their Amended Complaint, Plaintiffs allege that short form leases containing the "Grocery Exclusive language . . . are recorded in the public records of the jurisdiction where the Winn-Dixie stores are located." ECF No. 5, ¶ 21. Winn-Dixie uses these alleged public records to impute notice or knowledge of the "grocery exclusives" to Big Lots. *Id.*, ¶¶ 27, 30, 32. Yet, this is a clear overstatement. Winn-Dixie cannot succeed on its claim that Big Lots "violated" Winn-Dixie's restrictive covenant for Big Lots store 501 because Big Lots entered into its lease for store 501 before Winn-Dixie recorded its short form lease for Winn-Dixie store 191. *See* Halley Aff. ¶ 7; SOF ¶ 13. The recorded short form leases for Winn-Dixie stores 97 and 701, which purportedly correspond with Big Lots stores 1507 and 1605, respectively, and the recorded memoranda of lease for Winn-Dixie stores 506 and 1513, which purportedly correspond with Big Lots stores 505 and 1873 respectively, do not contain Winn-Dixie's grocery exclusives and therefore are ineffective as a means of imputing notice to co-tenants. *See* Halley Aff. ¶ 8; SOF ¶ 14. Therefore, Plaintiffs' claims regarding Big Lots stores 501, 505, 1507, 1605, and 1873 fail as a matter of law.

As established above, the evidence before the Court demonstrates that the following Big Lots stores are not subject to any Winn-Dixie "grocery exclusive" as alleged by Plaintiffs: Big Lots store numbers 501, 505, 1397, 1507, 1605, 1711, and 1873. Plaintiffs have offered no contradictory evidence. Because none of these stores is subject to any so-called Winn-Dixie "grocery exclusive," Plaintiffs cannot succeed under any theory alleged in their Amended Complaint on claims pertaining to them. Accordingly, the Court should grant summary judgment in favor of Big Lots and against Winn-Dixie on all claims involving <u>Big Lots store</u>

numbers 501, 505, 1397, 1507, 1605, 1711, and 1873. This will remove over one-third of the Big Lots stores that Winn-Dixie has alleged to be "violating locations" from this action.

## IV. BIG LOTS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF DAMAGES.

In this action, Plaintiffs seek damages in an as yet unquantified amount as a result of Big Lots' alleged breaches of the restrictive covenants. The undisputed facts, however, demonstrate that Plaintiffs' claim for damages fails as a matter of law by virtue of the bankruptcy reorganization in 2006 of Winn-Dixie Stores, Inc. and certain affiliates (the "Winn-Dixie Debtors"). Prior to the 2006 bankruptcy reorganization, Plaintiffs Winn-Dixie Raleigh, Inc., Winn-Dixie Montgomery, LLC, and Winn-Dixie Stores, Inc. (the "Operating Plaintiffs") owned and operated the stores at issue. As a material condition of the financing facility ("Exit Facility") that enabled the Operating Plaintiffs to emerge reorganized from bankruptcy in 2006, Winn-Dixie's lenders required that the leases be separated from the operations.

Thus, Winn-Dixie Montgomery Leasing, Winn-Dixie Raleigh Leasing, and Winn-Dixie Stores Leasing were created in connection with the plan of reorganization for the sole purpose of owning the various Winn-Dixie leaseholds (the "Leasing Plaintiffs"). *See Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors*, page 25 [ECF No. 10058], filed August 9, 2006, in Case No. 05-03817, U.S. Bankruptcy Court, M.D. Fl.; SOF, ¶ 3. The Winn Dixie Debtors included the Operating Plaintiffs. The order confirming the plan of reorganization provided for the creation of the Leasing Plaintiffs and the transfer to them of all the Operating Plaintiffs' leaseholds.[5]

---

[5] *Order Confirming Joint Plan of Reorganization of Winn-Dixie Stores, Inc. and Affiliated Debtors*, paragraph 52, [ECF No. 12440] filed November 9, 2006 in Case No. 05-03817, U.S. Bankruptcy Court, M.D. Fla.

13

2346114v4

The plan of reorganization became effective on November 21, 2006.[6] On that day, each of the Operating Plaintiffs assigned to the Leasing Plaintiff paired with it, all of the Operating Plaintiff's right, title and interest in its leases and was appointed Manager of the supermarkets located on the leaseholds. The six Plaintiffs in this case can thus be broken down into three pairs, each having an Operating Plaintiff and a Leasing Plaintiff.[7] With regard to each pair, the Leasing Plaintiff has all right, title and interest under the leases and the Operating Plaintiff is denominated as "Manager." With respect to each pair, the Manager operates the supermarkets, pays all the tenant's expenses and keeps as its compensation the excess of revenues over expenses. The Operating Plaintiff shares no excess revenues with the Leasing Plaintiff, and the Leasing Plaintiff conveys no rights under any lease to the Operating Plaintiff.

Because the Leasing Plaintiffs are the tenants under the shopping center leases, they have the benefit of the "grocery exclusives." However, the Leasing Plaintiffs cannot claim that Big Lots has caused them to suffer loss of profits, because they do not operate the supermarkets and do not share in the profits from the operations, and thus have no damages. On the other hand, the Operating Plaintiffs cannot claim the damages for breach of the Grocery Exclusive Provisions because they are mere managers, are not tenants or subtenants or vested with any current contract rights in a Grocery Exclusive. Thus, Plaintiffs' bankruptcy reorganization, and particularly their compliance with the conditions of the Exit Facility, has effectively prevented any award of damages in this case.

---

[6] *Notice of Plan Effective Date and Related Matters* [ECF No. 1274] filed November 21, 2006, in Case No. 05-03817, U.S. Bankruptcy Court, M.D. Fl.

[7] One pair is Winn-Dixie Stores, Inc., which is an Operating Plaintiff, and Winn-Dixie Stores Leasing, LLC, which is a Leasing Plaintiff; the second pair is Winn-Dixie Raleigh, Inc., which is an Operating Plaintiff and Winn-Dixie Raleigh Leasing, LLC, which is a Leasing Plaintiff; the third pair is Winn-Dixie Montgomery, LLC, which is an Operating Plaintiff and Winn-Dixie Montgomery Leasing, LLC., which is a Leasing Plaintiff.

## V. BIG LOTS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PUNITIVE DAMAGES CLAIM.

Plaintiffs seek an award of punitive damages resulting from Big Lots' alleged breaches of their restrictive covenants. ECF No. 5 at ¶ 33. However, the undisputed facts demonstrate that punitive damages are not available, in cases like this one, where the cause of action is enforced under principles of equity. Likewise, punitive damages are also not available where, like here, Plaintiffs' cause of action arises out of contract.

### a. Florida Law Governs The Appropriateness Of Punitive Damages In This Action.

"The Florida conflicts rule, which the district court sitting in Florida [has] to follow . . . indicates that the law of Florida, the forum, governs this question of the proper remedy for breach of contract." *Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1473, n. 14 (11th Cir. 1989). In Plaintiffs' attempt to show that they can enforce a restrictive covenant and proceed solely against Big Lots without including landlords that were signatories to the leases, Plaintiffs adamantly contended that "this is **not** a contract case." ECF No. 18 at 10. Instead, Plaintiffs characterized the "restrictive covenants" upon which this action is based as "real property right[s]." *Id.* Yet, according to the Florida Supreme Court, a "restrictive covenant . . . is but a creature of equity arising out of contract." *Homer v. Dadeland Shopping Ctr., Inc.*, 229 So. 2d 834, 836 (Fla. 1969). The Third District Court of Appeal has held that "deed restrictions of this type [restrictive covenants] are simply equitable rights arising out of the contractual relationship between and among the property owners and *emphatically do not constitute interests in real estate* . . . ." *Cudjoe Gardens Prop. Owners Ass'n, Inc. v. Payne*, 779 So. 2d 598, 598-99 (Fla. 3d DCA 2001) (emphasis added). Similarly, the First District Court of Appeal held that restrictive covenants are "private promises or agreements creating negative easements or

equitable servitudes which are enforceable as rights arising *out of contract*." *Kilgore*, 676 So. 2d at 7 (internal citations omitted) (emphasis added). The Second District Court of Appeal has also stated: "the restrictive covenant in this case was an agreement creating a negative easement or equitable servitude on the Sonns' property which was *contractual in nature*." *Fiore v. Hilliker*, 993 So. 2d 1050, 1053 (Fla. 2d DCA 2008) (emphasis added).

Accordingly, this action arises out of contract and should be construed and enforced under contract principles. The grocery exclusives arise out of the lease agreements between Plaintiffs and their landlords. As Big Lots was not a party to those agreements, if the grocery exclusives are enforceable against Big Lots it is because equity allows it. Nevertheless, the grocery exclusives (and the lease agreements in which they are located) are contracts. Plaintiffs' action arises out of Big Lots' alleged violations of grocery exclusives. Assuming *arguendo* that equity permits Plaintiffs to enforce these terms against a non-party, such as Big Lots, the fact remains that this action is for alleged violations of a lease agreements, or in other words, for a breach of contract.

      **b.    Punitive Damages May Not Be Awarded In Equity Unless Authorized By Statute.**

As stated above, "restrictive covenants" are contracts that give rise to contractual rights that are enforceable in equity. Under Florida law, courts sitting in "equity may not award punitive damages unless authorized by statute." *R.C. #17 Corp. v. Korenblit*, 207 So. 2d 296, 297 (Fla. 3d DCA 1968) (citing *Orkin Exterminating Co. v. Truly Nolen, Inc.*, 117 So. 2d 419 (Fla. 3d DCA 1960)).

Here, Plaintiffs' claim arises out of equity, not law. *See Homer*, 229 So. 2d at 836. Assuming *arguendo* that Plaintiffs can enforce the grocery exclusives against Big Lots, such enforcement right arises out of equity. The damages sought here are recoverable, if at all,

because they are incidental to Plaintiffs' equitable claim. *See R.C. # 17*, 207 So. 2d at 297. Plaintiffs' action does not include any claim arising under a claim of law. In light of Florida law, which prohibits courts sitting in equity from awarding punitive damages unless authorized by statute, Plaintiffs are not entitled to punitive damages, as no statute so authorizes.

  **c.**  **Punitive Damages Are Not Available Under Florida Law In An Action On A Contract.**

In addition, Plaintiffs are not entitled to punitive damages because such damages are not available as a remedy for an action that arises from a contract. Punitive damages are not an appropriate remedy for a breach of contract claim under Florida law:

> The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant. But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof. In order to permit recovery, however, the breach must be attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort.

*Griffith v. Shamrock Vill., Inc.*, 94 So. 2d 854, 858 (Fla. 1957); *See also Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821, 822 (Fla. 1996) (holding "[o]nly if a party to a contract proves a tort independent from the acts that breach the contract is the party entitled to recover punitive damages.").

Again, Plaintiffs' cause of action arises out of contract. Accordingly, Plaintiffs are not entitled to punitive damages unless Big Lots' actions in allegedly breaching of the grocery exclusives also constituted a tort. As Plaintiffs have neither alleged nor demonstrated by the evidence presented to the Court any facts that, if true, give rise to a tort, Plaintiffs are not entitled to punitive damages as a matter of law.

17

2346114v4

## **CONCLUSION**

For the reasons discussed herein, Big Lots respectfully requests that this Court enter summary judgment in favor of Big Lots and against Plaintiffs, holding that: (a) Winn-Dixie's "grocery exclusives" are not enforceable against Big Lots as real property covenants running with the land; (b) Winn-Dixie's claims fail against Big Lots store numbers 501, 505, 1397, 1507, 1605, 1711, and 1873, which are not subject to, and therefore cannot be in violation of, any so-called Winn-Dixie "grocery exclusive"; (c) Big Lots is entitled to judgment as a matter of law on the issue of damages by virtue of the bankruptcy reorganization in 2006 of Winn-Dixie Stores, Inc. and certain affiliates; and (d) Big Lots is entitled to summary judgment on the issue of Plaintiffs' claim for punitive damages.

[SIGNATURE ON FOLLOWING PAGE]

2346114v4

Dated: January 17, 2012

Respectfully submitted,

/s/ *Michael V. Elsberry*
Michael V. Elsberry
Florida Bar No. 0191861
*michael.elsberry@lowndes-law.com*
W. Drew Sorrell
Florida Bar No. 0160903
*drew.sorrell@lowndes-law.com*
Rebecca E. Rhoden
Florida Bar No. 0019148
*Rebecca.rhoden@lowndes-law.com*
LOWNDES, DROSDICK, DOSTER, KANTOR & REED, P.A.
450 South Orange Avenue, Suite 800
P.O. Box 2809
Orlando, Florida 32802-2809
Telephone:  (407) 843-4600
Facsimile:  (407) 843-4444

**With Co-Counsel:**
William N. Withrow, Jr.
(Admitted Pro Hac Vice)
*william.withrow@troutmansanders.com*
Brian P. Watt
(Admitted Pro Hac Vice)
*brian.watt@troutmansanders*.com
Shakara M. Barnes
(Admitted Pro Hac Vice)
*shakara.barnes@troutmansanders.com*
TROUTMAN SANDERS LLP
600 Peachtree Street, NE, Suite 5200
Atlanta, GA  30308-2216
Telephone:  (404) 885-3000
Facsimile:  (404) 885-3900

**Counsel for Defendant and Third-Party Plaintiff Big Lots Stores, Inc.**

2346114v4

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2012, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all parties of record, including those on the service list below.

/s/ Michael V. Elsberry
Michael V. Elsberry

Thomas E. Warner, Esq.
*twarner@carltonfields.com*
CARLTON FIELDS, P.A.
CityPlace Tower – Suite 1200
525 Okeechobee Boulevard
West Palm Beach, FL  33401
**Counsel for Plaintiffs**

Gary Stephen Phillips, Esq.
*gphillips@phillipslawyers.com*
Laura J. Varela, Esq.
*lvarela@phillipslawyers.com*
Phillips, Cantor & Berlowitz, P.A.
4000 Hollywood Boulevard, Suite 500
North Hollywood, FL 33021
**Counsel for Hudson Bay Trading Company**

Alan Michael Burger , Esq.
*aburger@mcdonaldhopkins.com*
McDonald Hopkins LLC
505 S. Flagler Drive – Suite 300
West Palm Beach, FL 33401
**Counsel for Sarria Holdings IV, Inc.**

Mark Alan Silverman, Esq.
*msilverman@fwblaw.net*
Frank Weinberg & Black
7805 SW 6th Court
Plantation, FL 33324
**Counsel for Ireland Biloxi, Ltd.**

Sergiu Gherman, Esq.
*sgherman@ghermanlaw.com*
Gherman Legal PLLC
The Ingraham Building
25 SE 2nd Avenue – Suite 808
Miami, FL 33131-1603
**Counsel for Avon Square, LTD**

Christopher Stephen Rapp, Esq.
*csrapp@jones-foster.com*
Robert William Wilkins, Esq.
*rwilkins@jones-foster.com*
Jones Foster Johnston & Stubbs
505 S. Flagler Drive - Suite 1100
West Palm Beach, FL 33401
**Counsel for Noble Management Company and NPI, Inc.**

Michelle Garcia Gilbert, Esq.
*michelle@gilbertgrouplaw.com*
Gilbert Garcia Group, P.A.
2005 Pan Am Circle – Suite 110
Tampa, FL 33607
**Counsel for Lake Wales Associates, LLC**

Richard Dunn, Esq.
rdunn@cozen.com
Jermaine A. Lee, Esq.
jalee@cozen.com
Cozen O'Connor
200 South Biscayne Blvd., Suite 4410
Miami, FL 33131-2303
**Counsel for Northeast Plaza Venture I, LLC**

2346114v4